# 24-2362

---

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

---

MICHAEL NACHMAN, individually and on behalf of
a class of similarly situated persons,
*Plaintiff-Appellant*,

v.

TESLA, INC., TESLA LEASE TRUST, and TESLA FINANCE LLC,
*Defendants-Appellees*.

---

Appeal from the
United States District Court for the Eastern District of New York
Case No. 2:22-cv-05976-RPK-ST, Honorable Rachel P. Kovner, Presiding

---

## BRIEF OF PLAINTIFF-APPELLANT MICHAEL NACHMAN

---

GEORGE V. GRANADE
**REESE LLP**
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

*Counsel for Plaintiff-Appellant Michael Nachman and the Proposed Class*
(Additional counsel listed on signature page)

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ............................................................. 1

QUESTIONS PRESENTED ......................................................................... 3

STATEMENT OF THE CASE ..................................................................... 4

I.    Relevant Facts ................................................................................. 6

    A.    Plaintiff's Original Class Action Complaint ........................... 6

    B.    Plaintiff's Proposed Amended Class Action Complaint ....... 13

II.   Procedural History ........................................................................ 14

    A.    The Memorandum and Order Granting Defendants'
        Motion to Dismiss ................................................................. 14

    B.    The Memorandum and Order Denying Plaintiff's
        Motion for Leave to Amend .................................................. 17

SUMMARY OF ARGUMENT ................................................................... 20

ARGUMENT .............................................................................................. 25

I.    Legal Standards .............................................................................. 25

    A.    Standards of Appellate Review ............................................. 25

    B.    Legal Standard for the Statute of Limitations
        Affirmative Defense on a Motion to Dismiss ........................ 26

    C.    Legal Standard on a Motion for Leave to Amend ................. 27

II.   The District Court Erred in Ruling Plaintiff's Claims under
    New York General Business Law Sections 349 and 350

Accrued in December 2016 and Are Therefore Time-Barred on the Face of the Pleading..................................................29

III.    The District Court Erred in Denying Plaintiff's Motion for Leave to Amend on Futility Grounds Because It Failed to Draw Reasonable Inferences in Plaintiff's Favor .........................41

IV.    The District Court Erred to the Extent That It Misapplied the Continuing Violation Doctrine, or Required Plaintiff to Allege Reliance, in Denying Plaintiff's Motion for Leave to Amend ......................................................................................47

CONCLUSION ........................................................................56

CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(g)...........................................58

# TABLE OF AUTHORITIES

<u>**CASES**</u>

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................. 29

*Ballast v. Workforce7 Inc.*, No. 20-cv-03812-ER,
   2023 WL 3301839 (S.D.N.Y. May 8, 2023) ......................................... 29

*Basso v. New York University*, No. 16-cv-07295-VM,
   2017 WL 1019505 (S.D.N.Y. Feb. 24, 2017) ...................... 19, 24, 47, 52

*Bensch v. Est. of Umar*,
   2 F.4th 70 (2d Cir. 2021) ........................................................... 26

*Breitman v. Xerox Educ. Services LLC*, No. 12-cv-06583-PAC,
   2013 WL 5420532 (S.D.N.Y. Sept. 27, 2013) ................................. 48, 51

*Clark v. Hanley*,
   89 F.4th 78 (2d Cir. 2023) .......................................................... 40

*Corsello v. Verizon New York, Inc.*,
   967 N.E.2d 1177 (N.Y. 2012) ...................................................... 36

*Eidelman v. Sun Prods. Corp.*, No. 21-1046-CV,
   2022 WL 1929250 (2d Cir. June 6, 2022) ...................................... 55, 56

*Essex Cap. Corp. v. Garipalli*, No. 17-cv-06347-JFK,
   2018 WL 6618388 (S.D.N.Y. Dec. 18, 2018) .................................. 27, 40

*Fishon v. Peloton Interactive, Inc.*,
   620 F. Supp. 3d 80 (S.D.N.Y. 2022) ............................................ 54, 55

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................... 27, 28

*Gaidon v. Guardian Life Ins. Co.*,
    750 N.E.2d 1078 (N.Y. 2001) ........................................................ passim

*Ghartey v. St. John's Queens Hosp.*,
    869 F.2d 160 (2d Cir. 1989) ................................................................ 26

*Harvey v. Metro. Life Ins.*, 21 Misc. 3d 1142(A),
    2005 WL 6227851 (N.Y. Sup. Ct. 2005) ................................... 48, 49, 50

*Harvey v. Metro. Life Ins.*,
    827 N.Y.S.2d 6 (2006) ................................................................... 50, 51

*Hasemann v. Gerber Prods. Co.*,
    331 F.R.D. 239 (E.D.N.Y. 2019) ............................................................ 53

*Koch v. Acker, Merrall & Condit Co.*,
    967 N.E.2d 675 (N.Y. 2012) ......................................................... 24, 52

*Kurtz v. Kimberly-Clark Corp.*,
    321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................ 54

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ................................................................ 28

*Mantikas v. Kellogg Co.*,
    910 F.3d 633 (2d Cir. 2018) ................................................................ 44

*Michael Grecco Prods., Inc. v. RADesign, Inc.*,
    112 F.4th 144 (2d Cir. 2024) ........................................................ passim

*Murphy v. Commonwealth Land Title Ins.*,
    621 F. Supp. 3d 373 (E.D.N.Y. 2022) ................................................... 48

*Nachman v. Tesla, Inc.*, No. 2:22-cv-05976-RPK-ST,
    2023 WL 6385772 (E.D.N.Y. Sept. 30, 2023) ........................................ 4

*Nachman v. Tesla, Inc.*, No. 2:22-cv-05976-RPK-ST,
    2024 WL 3675902 (E.D.N.Y. Aug. 6, 2024) ........................................... 4

*Orlander v. Staples, Inc.*,
　802 F.3d 289 (2d Cir. 2015) .................................................. 36

*Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank,*
　*N.A.*, 647 N.E.2d 741 (1995) ................................................ 44

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
　681 F.3d 114 (2d Cir. 2012) ..................................... 28, 43, 44

*Pelman ex rel. Pelman v. McDonald's Corp.*,
　396 F.3d 508 (2d Cir. 2005) .................................................. 47

*Plavin v. Grp. Health Inc.*, No. 3:17-cv-01462,
　2023 WL 6200804 (M.D. Pa. Sept. 22, 2023) ................... 51, 52

*Rodriguez v. It's Just Lunch, Int'l*,
　300 F.R.D. 125 (S.D.N.Y. 2014) ........................................... 53

*Sacerdote v. New York Univ.*,
　9 F.4th 95 (2d Cir. 2021) ..................................................... 28

*Schiebel v. Schoharie Cent. Sch. Dist.*, --- F.4th ----, No. 23-1080,
　2024 WL 4644958 (2d Cir. Nov. 1, 2024) ..................... 29, 43, 44

*Sewell v. Bernardin*,
　795 F.3d 337 (2d Cir. 2015) ........................................... 27, 40

*Sharpe v. A&W Concentrate Co.*, No. 19-cv-00768-BMC,
　2021 WL 3721392 (E.D.N.Y. July 23, 2021) ................... 53, 54

*Spagnola v. Chubb Corp.*,
　574 F.3d 64 (2d Cir. 2009) .................................................. 37

*Spiro v. Healthport Techs., LLC*,
　73 F. Supp. 3d 259 (S.D.N.Y. 2014) ..................................... 37

*Stanley v. Direct Energy Servs., LLC*,
　466 F. Supp. 3d 415 (S.D.N.Y. 2020) .................................... 48

*Stuart v. Am. Cycanamid Co.*,
   158 F.3d 622 (2d Cir. 1998) .................................................. 30

*Stutman v. Chem. Bank*,
   731 N.E.2d 608 (N.Y. 2000) ........................................... passim

*Valcarcel v. Ahold U.S.A., Inc.*,
   577 F. Supp. 3d 268 (S.D.N.Y. 2021) ................................... 36

## STATUTES

28 U.S.C. § 1291 .................................................................... 2

28 U.S.C. § 1332 .................................................................... 1

N.Y. C.P.L.R. 214 ................................................................ 30

## OTHER AUTHORITIES

Federal Rule of Appellate Procedure 4 ..................................... 2

Federal Rule of Civil Procedure 8 ............................... 26, 46, 47

Federal Rule of Civil Procedure 9 ........................................ 47

Federal Rule of Civil Procedure 12 ................................. passim

Federal Rule of Civil Procedure 15 ...................... 17, 23, 27, 43

## JURISDICTIONAL STATEMENT

This appeal is from a final judgment that disposes of all claims of Plaintiff Michael Nachman ("Plaintiff" or "Nachman") in this action against Defendants Tesla, Inc., Tesla Lease Trust, and Tesla Finance LLC (collectively, "Defendants" or "Tesla").

The United States District Court for the Eastern District of New York had subject matter jurisdiction over this putative class action under 28 U.S.C. § 1332(d)(2), which provides for the original jurisdiction of the federal district courts over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and [which] is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant . . . [and] the number of members of all proposed plaintiff classes in the aggregate" is greater than 100. § 1332(d)(2)(A), (5)(B).

Plaintiff alleges the amount in controversy exceeds $5,000,000, exclusive of interest and costs. A00014 ¶ 18. Plaintiff is a citizen of New York, and Defendant Tesla, Inc., is a citizen of Delaware and Texas. A00012-13 ¶¶ 13-14. And Plaintiff alleges there are more than 100 members in the putative class. *See* A00014 ¶ 18 (no exception to § 1332(d)

1

applies).

On September 30, 2023, the District Court entered a Memorandum and Order granting Tesla's motion to dismiss Nachman's Class Action Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) with leave to file a motion for leave to amend. A00072-83 ("Order"). Plaintiff moved for leave to amend on November 20, 2023, A00004 (D.C. ECF No. 26), and briefing on the motion was complete by December 18, 2023, *see* A00004-05 (D.C. ECF Nos. 27, 30).

On August 6, 2024, the District Court entered a Memorandum and Order denying Plaintiff's motion for leave to amend and directing the Clerk of Court to enter judgment and close the case. A00132-38 ("Second Order"). The Clerk of Court entered Judgment the next day. A00139.

Plaintiff filed a notice of appeal on September 5, 2024 (A00140), which is 30 days after the District Court entered the Second Order. Thus, the appeal is timely under Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure. Plaintiff appeals the Order, the Second Order, and the Judgment. *Id.*

This Court therefore has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, which provides the courts of appeals with jurisdiction

over final decisions issued by the district courts.

## **QUESTIONS PRESENTED**

1.     Did the District Court err when it ruled in its Order granting Defendants' motion to dismiss and in its Second Order denying Plaintiff's motion for leave to amend that Plaintiff's claims under New York General Business Law ("GBL") sections 349 and 350 accrued in December 2016 when Plaintiff purchased his Tesla Vehicle and are therefore time-barred on the face of the pleading because Plaintiff filed this case on October 5, 2022?

2.     Did the District Court err in denying Plaintiff's motion for leave to amend because it failed to draw reasonable inferences in Plaintiff's favor as required by the legal standards governing determination of whether amendment would be futile, and instead drew inferences against Plaintiff?

3.     In denying Plaintiff's motion for leave to amend, did the District Court misapply the continuing violation doctrine?

4.     In denying Plaintiff's motion for leave to amend, did the District Court erroneously import a reliance requirement into Plaintiff's claims for violation of GBL sections 349 and 350?

## STATEMENT OF THE CASE

Plaintiff appeals from two decisions by the Honorable Rachel P. Kovner, United States District Judge: the Order (A00072-83), which granted Tesla's motion to dismiss his Complaint with leave to file a motion for leave to amend, *Nachman v. Tesla, Inc.*, No. 2:22-cv-05976-RPK-ST, 2023 WL 6385772 (E.D.N.Y. Sept. 30, 2023), and the Second Order (A00132-38), which denied Plaintiff's motion for leave to amend, *Nachman v. Tesla, Inc.*, No. 2:22-cv-05976-RPK-ST, 2024 WL 3675902 (E.D.N.Y. Aug. 6, 2024). Plaintiff filed his original Complaint (A00006-71) on October 5, 2022, alleging Defendants deceptively marketed advanced driver assistance systems ("ADAS")[1] for certain "Tesla" brand Vehicles[2] by claiming ADAS would enable the Vehicles to be fully self-driving at an unspecified point in the future, when in fact the Vehicles to this day are nowhere close to being capable of fully self-driving, as they require constant and intensive human supervision and interaction. *See, e.g.*, A00007-09 ¶¶ 1-4; A00011-12 ¶¶ 9-11; A00019 ¶¶ 26-28; A00022

---

[1] Tesla has referred to ADAS as "Autopilot," "Enhanced Autopilot," and "Full Self-Driving Capability" ("FSD" or "FSDC"). A00007 ¶ 1.

[2] The "Vehicles" are "Tesla" brand vehicles with ADAS, including Autopilot, Enhanced Autopilot, and FSD. A00007.

¶ 39; A00034 ¶ 68; A00040 ¶ 87. Plaintiff alleges he and the putative class members were harmed by paying more to purchase the Vehicles with ADAS than they would have paid for "Tesla" brand vehicles without ADAS. A00007. Tesla moved to dismiss on December 30, 2022. A00003-04 (D.C. ECF Nos. 16, 19-21). On September 30, 2023, the District Court granted the motion to dismiss with leave to file a motion for leave to amend, A00072-83, which Plaintiff filed on November 20, 2023, A00004 (D.C. ECF No. 26). The District Court denied the motion for leave to amend on August 6, 2024, A00132-38, and the Clerk of Court entered Judgment on August 7, 2024, A00139. Plaintiff appealed on September 5, 2024. A00140.

For the reasons below, Plaintiff respectfully submits that the Court should reverse the District Court's Order granting Tesla's motion to dismiss, vacate the Judgment, and remand the case for further proceedings. And even if the Court disagrees, it should reverse the District Court's decision denying leave to amend.

## I.    Relevant Facts

### A.    Plaintiff's Original Class Action Complaint

From 2014 to 2016, Tesla made a continuing series of deceptive marketing statements about the ADAS feature of its Vehicles which indicated the Vehicles would soon be fully self-driving, including:

- In 2014, Tesla misleadingly named a driver assistance feature "Autopilot." A00020 ¶ 32; *see also* A00024 ¶ 42; A00025 ¶ 45.[3]

- In December 2015, Tesla CEO Elon Musk ("Musk") publicly stated that Tesla vehicles would drive themselves within about two years. A00021 ¶ 36. He told *Fortune* magazine, "I think we have all the pieces, and it's just about refining those pieces, putting them in place, and making sure they work across a huge number of environments—and then we're done. It's a much easier problem than people think it is." *Id.*

- On a January 2016 Tesla conference call with reporters, Musk misleadingly claimed that Autopilot was "probably better" than a human driver and that Tesla owners would be able to use Tesla's "Summon" feature to summon a vehicle from the other side of the country within approximately two years. A00021 ¶ 37.

- On June 2, 2016, Musk misleadingly claimed that autonomous driving was "basically a solved problem," that Autopilot was already safer than a human driver on highways, and that Tesla was "basically less than two years away from complete autonomy." A00024 ¶ 41.

---

[3] Many of Tesla's misrepresentations are repeated over time, such as the names "Autopilot," "Enhanced Autopilot," and "Full Self-Driving."

On October 19, 2016, Tesla announced all new Tesla cars would come with a new suite of hardware including eight cameras, twelve ultrasonic sensors, and a forward-facing radar unit, which Tesla claimed would allow the cars to soon become capable of SAE Level 5[4] autonomy (*i.e.*, full self-driving). A00025 ¶ 46. To access the hardware, owners would have to pay $5,000 for an "Enhanced Autopilot" feature and another $3,000 for the right to activate Tesla's promised FSD capability. *Id.* Purchasing the FSD package allowed unlimited access to full self-driving technology, which was "soon-to-arrive." *Id.*; *see also* A00026-27 ¶¶ 47-49. On October 20, 2016, Musk posted on social media that Tesla's Summon feature was capable of autonomously driving itself to pick up its owner "even if you are on the other side of the country." A00028 ¶ 51.

After October 2016, Tesla continued its series of deceptive marketing statements about the ADAS feature of its Vehicles which indicated the Vehicles would soon be fully self-driving. *See, e.g.*, A00010 ¶ 8 ("[I]n every year since 2016, Tesla and Musk have repeatedly made

---

[4] The SAE Levels of Driving Automation ("SAE Levels") provide a taxonomy of vehicle driving automation systems with detailed definitions for six levels for driving automation, ranging from no driving automation (SAE Level 0) to full driving automation (SAE Level 5). *See* A00015-18 ¶¶ 21-25.

deceptive and misleading statements to consumers indicating that a fully self-driving, fully autonomous Tesla vehicle was just around the corner, often expressly stating that would occur by the end of that calendar year or within the 'next year.'"). These statements include the following:

- Musk misleadingly claimed at an April 2019 event that Tesla Vehicles would be capable of full self-driving by the end of 2019, that in two years Tesla would be making cars without steering wheels or pedals, and that "for sure" by 2020 Tesla would have "over a million robo-taxis on the road." A00030 ¶ 57.[5]

- During December 2020, Musk gave an interview to Business Insider in which he promised Tesla would achieve SAE Level 5 before the end of the following year, stating, "I'm extremely confident that Tesla will have level five next year, extremely confident, 100%." A00034 ¶¶ 68, 68 n.44.

- In a January 2021 earnings call, Musk stated that the company had made "massive progress on Full Self-Driving," and that it "will become obvious later this year" that "Tesla Autopilot is capable of full self-driving." A00034-35 ¶ 70. On the same call, Musk also stated, "I'm highly confident the car will drive itself for the reliability in excess of a human this year" and that "[t]his is a very big deal." *Id.* When a financial analyst asked Musk why he was confident Tesla would achieve SAE Level 5 autonomy in 2021, Musk responded, "I'm confident based on my understanding of the technical roadmap and the progress that we're making between each beta iteration." *Id.*

---

[5] In October 2020, Defendants increased the price of the FSDC package to $10,000 and informed some existing FSDC customers that their cars would require a $1,000 hardware upgrade to maintain compatibility with self-driving technology moving forward. A00032 ¶ 64.

- On July 26, 2021, on a quarterly earnings call, Musk told investors and reporters that he was confident FSD-equipped Tesla vehicles would soon "be able to drive themselves with the safety levels substantially greater than that of the average person." A00037 ¶ 76.

- In January 2022, Musk stated on an earnings call, "My personal guess is that we'll achieve Full Self-Driving this year. I would be shocked if we do not achieve Full Self-Driving safer than a human this year. I would be shocked." A00039 ¶ 84.

Unfortunately for consumers, all of the above statements are deceptive because they suggest full self-driving is right around the corner, but to this day, Tesla's Vehicles are not self-driving. They are far from being *fully* self-driving. They have not even attained SAE Level 3, which is the minimum level required to claim a vehicle is capable of "automated driving." A00019 ¶¶ 26-28; A00035 ¶ 71. Instead, for years, there have been reports of accident after accident caused by the ADAS feature. A00022-25 ¶¶ 38-40, 42, 44-45; A00028-40 ¶¶ 52-56, 58-63, 65-67, 71-75, 77-78, 81-83, 86-87. When tested, ADAS was described as "like a drunken or distracted driver," or "a 14-year-old who has been learning to drive for the last week and sometimes appears to consume hard drugs." A00031 ¶ 59; A00040 ¶ 87.

Nachman is a New York resident who purchased a Tesla Model S from a Tesla dealership in Manhasset, New York, on December 31, 2016.

9

A00012 ¶ 13; A00041 ¶ 90. During the purchase process, Plaintiff and the sales representative sat at a desk in the dealership and selected the features for Plaintiff's Model S on the Tesla.com website. A00041 ¶ 90. The website made representations about FSD including but not limited to the following:

- "With Smart Summon, your car will navigate more complex environments and parking spaces, maneuvering around objects as necessary to come find you." A00042 ¶ 94.

- "The system is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat." A00042 ¶ 95.

- "All you will need to do is get in and tell your car where to go. If you don't say anything, the car will look at your calendar and take you there as the assumed destination or just home if nothing is on the calendar." *Id.*

- "When you arrive at your destination, simply step out at the entrance and your car will enter park seek mode, automatically search for a spot, and park itself." *Id.*

Tesla made clear that the Vehicle had the hardware it needed for full self-driving capability. A00042 ¶ 93. All that was missing was the necessary software, which Tesla was always on the cusp of providing in an over-the-air software update. A00007 ¶ 1; A00042 ¶ 95. Plaintiff viewed the foregoing claims through the website on the sales representative's

computer before agreeing to pay for the additional FSD package. A00043 ¶ 99. Plaintiff paid approximately $8,000 for the FSD package, above and beyond the standard costs for the Tesla Model S. A00044 ¶ 100.

Contrary to Tesla's representations, Plaintiff's Model S is not and has never been fully self-driving. A00044 ¶¶ 101, 107. By way of example, for the first several months, Plaintiff's Model S would not exceed speeds of 50 miles per hour. A00044 ¶ 101. The autopilot could only be activated in very limited and select locations. A00044 ¶ 102. When it was available, an indicator light would turn on allowing the feature to be activated. *Id.* However, if not in one of the select locations, the feature was unavailable. *Id.* This limitation on location was never disclosed to Plaintiff. *Id.*

When the autopilot is active, it requires Plaintiff to check-in with the system approximately once a minute. A00044 ¶ 103. When the check-in is required, an indicator light will appear. *Id.* If Plaintiff does not immediately check-in, a sound signal will begin as well. *Id.* If Plaintiff still does not check-in, the vehicle will slowly come to a stop. *Id.* The autopilot cannot be reactivated until Plaintiff exists the vehicle and comes back in. *Id.* As a result, Plaintiff must continuously monitor the autopilot. *Id.*

11

In at least one incident, the autopilot began navigating out of its lane and towards another car. A00044 ¶ 104. Plaintiff was forced to jerk the wheel back to return the car to his lane. *Id.* The redlight detection feature often fails to detect redlights. A00044 ¶ 105.

Based on Tesla's representations that the system would be improved through over-the-air software updates, Plaintiff continually awaited new updates which would allow the full self-driving capabilities that Tesla claimed the car would have. A00044 ¶ 106. However, those updates were never forthcoming. *Id.*

As a result of Tesla's deceptive marketing of its ADAS feature, Plaintiff and other similarly situated consumers have been injured, in that they paid thousands of dollars extra for fully self-driving functionality that never materialized. *See, e.g.*, A00044 ¶¶ 100, 107.

Seeking redress for Defendants' deceptive conduct, Plaintiff asserted the following claims in the Complaint on behalf of a putative New York class (A00045 ¶ 109): (i) violation of New York GBL section 349, A00046-47 ¶¶ 116-25; (ii) violation of New York GBL section 350, A00047-48 ¶¶ 126-33; and (iii) unjust enrichment, A00049 ¶¶ 134-37. The Complaint sought monetary and injunctive relief. A00049-50.

**B.    Plaintiff's Proposed Amended Class Action Complaint**

When the District Court granted Tesla's motion to dismiss the original Complaint, it permitted Nachman to seek leave to file an amended pleading. A00083. Nachman did so on November 20, 2023, A00004 (D.C. ECF No. 26), submitting with his motion a proposed Amended Class Action Complaint showing the differences between the original Complaint and the proposed Amended Complaint in redline, A00084-131.

The proposed Amended Complaint includes new allegations that in May 2022, Nachman paid "an additional $1,500 for a software upgrade for the ADAS." A00091 ¶ 13. Specifically, on May 3, 2022, Plaintiff "brought his vehicle into [the] Tesla dealership in Syosset, New York, for service," and "[a]s part of that service, Plaintiff paid $1,500 for the 'Infotainment Upgrade' in his 2016 Model S." A00125 ¶ 108. The proposed Amended Complaint further pleads that "[t]he Infotainment Upgrade was offered to Model S and Model X vehicles built before March 2018"; that "[a]ccording to Tesla, the Infotainment Upgrade 'enhance[d] both the entertainment and functionality of [Plaintiff's] car'"; and that "[o]ne of the functionalities was 'Driver Assistance', with the specific

improvement of 'Enhanced Driving Visualization for owners with the Full Self-Driving Capability Computer.'" A00125 ¶ 109. The proposed Amended Complaint pleads Plaintiff and the putative class members suffered an additional injury when they paid for the upgrade. A00085; A00085 ¶ 1; A00127 ¶ 124; A00128-29 ¶ 131.

Finally, in the proposed Amended Complaint, Nachman continues to allege claims for violation of GBL sections 349 and 350 but has deleted his unjust enrichment claim. A00126-30 ¶¶ 117-34. He continues to seek monetary and injunctive relief. A00130-31.

## II.  Procedural History

Plaintiff filed his original Complaint on October 5, 2022. A00006-71. Tesla moved to dismiss under Rule 12(b)(6) on December 30, 2022. A00003-04 (D.C. ECF Nos. 16, 19-21). Nachman opposed the motion on January 27, 2023, *id.* (D.C. ECF Nos. 17, 22), and Tesla replied on February 10, 2023, A00004 (D.C. ECF No. 23).

### A.  The Memorandum and Order Granting Defendants' Motion to Dismiss

The District Court issued the Order granting the motion to dismiss on September 30, 2023. A00072-83.

In the Order, the District Court dismissed Nachman's claims under

14

GBL sections 349 and 350 pursuant to Rule 12(b)(6) on the ground that they were time-barred on the face of the Complaint by the three-year statute of limitations governing sections 349 and 350.[6] A00075-79. The court held that while "the statute of limitations is an affirmative defense," the Complaint "establishes untimeliness because plaintiff's asserted injuries occurred more than three years ago." A00076. The court reasoned that claims under GBL sections 349 and 350 accrue when the plaintiff has "suffered injury as a result of an allegedly deceptive practice," A00076 n.2; that Plaintiff's "theory of injury under Sections 349 and 350 is that he was injured because he paid a premium price that he would not have paid but for the defendants' deceptive marketing," A00076; and that the three-year statute of limitations had run "because plaintiff made his purchase in December 2016, but did not file this lawsuit until October 2022," A00077 (citation omitted).

In opposing Tesla's motion to dismiss, Nachman argued, based on *Gaidon v. Guardian Life Ins. Co.*, 750 N.E.2d 1078 (N.Y. 2001), that "[w]hile Tesla took the premium payment for [FSD] on the date of

---

[6] The court also dismissed Plaintiff's unjust enrichment claim for failure to state a claim because it was duplicative. A00079-82. Plaintiff does not challenge the dismissal of the unjust enrichment claim.

15

purchase, that premium payment did not become 'measurable damage until the point in time when [the unrealistic] expectations [that Tesla's misrepresentations created that the Vehicles would become fully self-driving in the near future] were actually not met.'" Pl.'s Mem. Opp'n Defs.' Mot. Dismiss Compl. 9, D.C. ECF No. 22 (quoting *Gaidon*, 750 N.E.2d at 1084). In the Order, the District Court rejected this argument, A00077-78, reasoning that "the injury plaintiff alleges is simply that he paid a premium price when he bought the car—an event that occurred more than three years before he filed his lawsuit," A00078, and that "plaintiff does not suggest that he was among those owners [from whom Tesla demanded additional money for hardware upgrades after those consumers' initial purchases], or that he paid any additional money to Tesla for automated driving features after he bought the car," *id*. Thus, the District Court held "plaintiff has not alleged any injury occurring within the statute of limitations, [and therefore] his claims under Sections 349 and 350 are untimely." *Id.*

The District Court concluded by allowing Plaintiff to "file a motion seeking leave to file an amended complaint to remedy the deficiencies identified" in the Order. A00083.

**B.    The Memorandum and Order Denying Plaintiff's Motion for Leave to Amend**

Plaintiff moved for leave to amend under Federal Rule of Civil Procedure 15(a) on November 20, 2023, A00004 (D.C. ECF No. 26), attaching to the motion a proposed Amended Complaint, A00084-131. Tesla opposed on December 4, 2023. A00004 (D.C. ECF Nos. 27-28). Plaintiff filed a reply in support of the motion on December 18, 2023. A00005 (D.C. ECF No. 30). Plaintiff filed a notice of supplemental authority on April 29, 2024, *id.* (D.C. ECF No. 31), to which Tesla responded on May 7, 2024, *id.* (D.C. ECF No. 32).

The District Court denied Nachman's motion for leave to amend on August 6, 2024, A00132-38, on the ground that the proposed Amended Complaint "fails to state a timely claim," A00136.

As an initial matter, the District Court reasoned that "[l]ike his initial complaint, plaintiff's proposed amended complaint alleges that plaintiff was injured because he paid a premium price for the FSDC package," but "[b]ecause . . . plaintiff purchased the FSDC package in 2016—over three years before he filed his initial complaint—the three-year statute of limitations for Sections 349 or 350 claims based on that injury has expired." A00136.

17

Addressing Plaintiff's new proposed allegations, the court reasoned that "[w]hile plaintiff proposes to amend his complaint to include the further allegation that he purchased an 'Infotainment Upgrade' in May 2022, amendment to include this additional fact would be futile because plaintiff does not plausibly allege the elements of a [GBL] claim with respect to the purchase of this upgrade." A00136 (citation omitted).

In support of the latter holding, first, the court stated Plaintiff "fails to allege that defendants' conduct related to the Infotainment Upgrade was materially misleading." A00137. With respect to Tesla's representation "that the Infotainment Upgrade included a feature that '[e]nhanced [d]riving [v]isualization for owners with the [FSDC] [c]omputer,'" the court held that "the proposed amended complaint includes no facts supporting the inference that the representation was likely to mislead a reasonable consumer." *Id.*

Second, the court held that "while the proposed amended complaint continues to allege that defendants and their representatives made misleading statements regarding the future availability of self-driving technology from 2014 to 2022, it fails to allege that these earlier statements had any causal connection to plaintiff's purchase of the

Infotainment Upgrade," which was fatal to Plaintiff's GBL claims "because a plaintiff asserting a [GBL] violation must allege that he 'suffered injury as a result of the allegedly deceptive act or practice.'" A00137 (citation omitted).

In seeking leave to amend, Nachman argued all of Tesla's deceptive representations stretching back to 2014 are at issue because the representations constitute a series of continuing wrongs, and the "continuing violation" doctrine therefore tolls the limitations period until the date of the commission of the last wrongful act, which occurred here in January 2022. Pl.'s Reply Supp. Mot. Leave File Am. Compl. 3-5, D.C. ECF No. 30. In the Second Order, the District Court did not directly discuss this argument, but it did cite *Basso v. New York University*, No. 16-cv-07295-VM, 2017 WL 1019505, at *5 (S.D.N.Y. Feb. 24, 2017), as holding that "the continuing violation doctrine did not apply to plaintiffs' [GBL] claims where plaintiffs failed to allege that they 'continually relied upon' defendants' 'renewed' deceptive acts." A00137-38.

For the foregoing reasons, the District Court denied leave to amend. A00138. The Clerk of Court entered Judgment on August 7, 2024. A00139. This appeal followed. A00140.

## SUMMARY OF ARGUMENT

In its Order and in its Second Order, the District Court made several clear errors of law that must be reversed.

*First*, in both the Order and the Second Order, the District Court erroneously held Plaintiff's GBL section 349 and 350 claims accrued on December 31, 2016, when Plaintiff paid $8,000 for the FSD features for his Vehicle. Claims under GBL section 349 and 350 do not accrue, however, until all of the factual circumstances necessary to establish a right of action have occurred, *Gaidon*, 750 N.E.2d at 1083-84, and here, Plaintiff's claim is not that Tesla's representations about the FSD capabilities of the Vehicle were false on the day of Plaintiff's purchase in December 2016. Rather, Plaintiff's claim is that Tesla's deceptive representations that the FSD features would enable Plaintiff's Vehicle to become fully self-driving sometime in the future created unrealistic expectations that on a date in the future Tesla would deliver to Plaintiff over-the-air software updates for the Vehicle that would make the Vehicle in fact fully self-driving. Thus, the representations were not false in December 2016, and they did not become false until the future date on which it became evident that the unrealistic expectations that Tesla

20

created that the Vehicle would one day be fully self-driving were in fact unmet. By holding the statute of limitations began running in December 2016 prior to the accrual of Plaintiff's claim, the District Court erroneously determined the statute of limitations period ended sooner than it should have ended.

Furthermore, it is not clear from the face of the pleading that Plaintiff's claim accrued more than three years before the filing of this case on October 5, 2022. But the statute of limitations is an affirmative defense on which Tesla bears the burden of proof, and the statute of limitations defense must be clear from the face of the pleading to be resolved on a Rule 12(b)(6) motion. For all of the foregoing reasons, the District Court erred when it held Plaintiff's GBL section 349 and 350 claims accrued in December 2016 and were therefore time-barred because Plaintiff did not file this case until more than three years later in October 2022.

*Second*, when, in the Second Order, the District Court determined that amendment of Plaintiff's pleading was futile and therefore denied Plaintiff's motion for leave to amend, the District Court erred because it drew inferences against Plaintiff instead drawing all reasonable

21

inferences in his favor.

Plaintiff's proposed Amended Complaint includes new allegations that he purchased an Infotainment Upgrade from Tesla in May 2022 for $1,500 which Tesla advertised as providing updated "Driver Assistance" functionality, with the specific improvement of "Enhanced Driving Visualization for owners with the Full Self-Driving Capability Computer." The District Court, however, held that these allegations do not give rise to timely claims for violation of GBL sections 349 and 350 because they are not sufficiently tied to Plaintiff's allegations regarding Tesla's repeated misrepresentations throughout the period from 2014 to 2022 regarding the future self-driving capability of Plaintiff's Vehicle. Specifically, the District Court held the new allegations did not establish "any causal connection" between Tesla's statements from 2014 and 2022 regarding FSD, on the one hand, and Plaintiff's purchase of the Infotainment Upgrade, on the other.

This holding is erroneous because the Amended Complaint does link Tesla's deceptive representations from 2014 to 2022 regarding the future capabilities of FSD with Plaintiff's payment of a premium price for the "Driver Assistance" features of the Infotainment Upgrade.

Nevertheless, the District Court elected to construe the pleading to aver no such connection. The District Court thus drew inferences against Plaintiff to hold that the proposed Amended Complaint failed under Rule 12(b)(6) to state a claim and therefore amendment would be futile under Rule 15. This was a clear misapplication of the standards governing evaluation of whether a proposed amendment would be futile, under which the court was required to draw all reasonable inferences in Plaintiff's favor.

*Third*, the Second Order is not a model of clarity with respect to whether it holds the continuing violation doctrine applies to Plaintiff's claims, but to the extent that the Second Order holds that the continuing violation doctrine does not apply, the District Court erred.

Under the continuing violation doctrine, a series of continuing wrongs effectively tolls the limitations period until the date of the commission of the last wrongful act. Here, the proposed Amended Complaint alleges Tesla made a series of continuing misrepresentations from 2014 to 2022 that the FSD technology would one day make the Vehicles fully self-driving. The continuing violation doctrine therefore applies, and the statute of limitations consequently was tolled until the

23

date of the most recent misrepresentation in the series of continuing misstatements.

In the Second Order, however, the District Court cited *Basso v. New York University* as a case where the continuing violation doctrine did not apply to the plaintiffs' GBL claims. Insofar as the court's citation of *Basso* indicated that the continuing violation doctrine does not apply to Nachman's claims here, the District Court committed error.

*Finally*, the Second Order is also not a model of clarity with respect to whether it holds that claims under GBL sections 349 and 350 include a reliance requirement, but to the extent that the District Court held that section 349 and 350 claims do include a reliance requirement, the District Court erred.

The New York Court of Appeals has held more than once that reliance is not an element of claims under GBL sections 349 and 350. *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 676 (N.Y. 2012); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612-13 (N.Y. 2000). Nevertheless, in denying Plaintiff's motion for leave to amend, the District Court cited *Basso v. New York University* for the proposition that the continuing violation doctrine does not apply where the plaintiffs fail

24

to allege that they "continually relied upon" the defendants' "renewed" deceptive acts. Insofar as the District Court imported a reliance requirement into Plaintiff's section 349 and 350 claims, the District Court contradicted the governing authority in *Koch* and *Stutman* and should be reversed.

For these reasons, described more fully below, the District Court's Order granting Defendants' motion to dismiss Plaintiff's Complaint should be reversed, and the Judgment should be vacated. Even if the Court disagrees, it should reverse the District Court's Second Order denying leave to amend.

## **ARGUMENT**

### I. **Legal Standards**

#### A. **Standards of Appellate Review**

This Court "review[s] a district court's grant of a motion to dismiss '*de novo*, accepting all factual allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff.'" *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 150 (2d Cir. 2024). "The application of a statute of limitations presents a legal issue and is also reviewed *de novo*." *Id.*

This Court "review[s] the denial of a motion for leave to amend for abuse of discretion." *Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021). "However, to the extent the denial of such a motion is based on futility, it rests on a legal conclusion, which we review *de novo.*" *Id.* Here, because the District Court's denial of Plaintiff's motion for leave to amend was based on futility, A00132; A00138, the standard of review is *de novo.*

**B.  Legal Standard for the Statute of Limitations Affirmative Defense on a Motion to Dismiss**

"The lapse of a limitations period is an affirmative defense that a defendant must plead and prove." *Michael Grecco Prods., Inc.*, 112 F.4th at 149; *see also* FED. R. CIV. P. 8(c)(1).

"However, a defendant may raise an affirmative defense in a pre-answer Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Michael Grecco Prods., Inc.*, 112 F.4th at 149; *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss.").

"Of course, affirmative defenses, like the statute of limitations, 'often require[ ] consideration of facts outside of the complaint and thus

26

[are] inappropriate to resolve on a motion to dismiss.'" *Michael Grecco Prods., Inc.*, 112 F.4th at 149-50. "Dismissal under Rule 12(b)(6) is therefore appropriate only if 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Id.*; *accord Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015); *Essex Cap. Corp. v. Garipalli*, No. 17-cv-06347-JFK, 2018 WL 6618388, at *2 (S.D.N.Y. Dec. 18, 2018) ("A statute of limitations affirmative defense normally cannot be decided on a motion to dismiss.").

### C.    Legal Standard on a Motion for Leave to Amend

Under Rule 15, after the deadline to amend as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). And under Rule 15(a)(2), the Court "should freely give leave when justice so requires." *Id.* As the United States Supreme Court has explained:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment,

27

etc.—the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962). And this Court has stated that the standard governing leave to amend is "liberal" and "permissive," *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021), which is "consistent with [the Court's] strong preference for resolving disputes on the merits," *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015).

Here, the District Court denied leave to amend on futility grounds. A00132; A00138. "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012). Thus, in assessing whether the proposed complaint states a claim, this Court "consider[s] 'the proposed amendment[s] . . . along with the remainder of the complaint,' accept[s] as true all non-conclusory factual allegations therein, and draw[s] all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief." *Id.* (citation omitted); *see also Schiebel v. Schoharie Cent. Sch. Dist.*, --- F.4th ----, No. 23-1080, 2024 WL 4644958,

28

at *4, *12 (2d Cir. Nov. 1, 2024) (in evaluating a motion to dismiss, the court "draw[s] all reasonable inferences in the plaintiff's favor" and "cannot" draw inferences against the plaintiff).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[F]actual determinations may not be made" on a motion for leave to amend, and the Court should not "consider the substantive merits of Plaintiffs' claims." *Ballast v. Workforce7 Inc.*, No. 20-cv-03812-ER, 2023 WL 3301839, at *6 (S.D.N.Y. May 8, 2023).

## II. The District Court Erred in Ruling Plaintiff's Claims under New York General Business Law Sections 349 and 350 Accrued in December 2016 and Are Therefore Time-Barred on the Face of the Pleading

In the Order dismissing the GBL section 349 and 350 claims, the District Court concluded "the three-year statute of limitations for Sections 349 or 350 claims based on [the] injury [that Plaintiff suffered when he paid a premium for the FSDC features] has run, because

29

plaintiff made his purchase in December 2016 but did not file this lawsuit until October 2022."[7] A00076-77; *see also* A00078. The District Court then doubled down on this position in the Second Order. A00136 ("Because, however, plaintiff purchased the FSDC package in 2016—over three years before he filed his initial complaint—the three-year statute of limitations for Sections 349 or 350 claims based on that injury has expired.").

But the District Court fails to grapple with *when* the deception occurred, thereby rendering the premium price an injury. While it is true that Plaintiff pled a price premium injury, this injury does not occur at the moment of purchase as the District Court presumes. This is because the deceptive representations at issue concerned a future event. Where the defendant makes representations about future events, thereby setting unrealistic expectations, the claim accrues when those unrealistic expectations do not come to be. *Gaidon*, 750 N.E.2d at 1083. Thus, Plaintiff's GBL section 349 and 350 claims did not accrue until it became

---

[7] A federal court sitting in diversity applies the statute of limitations of the state in which it sits. *Stuart v. Am. Cycanamid Co.*, 158 F.3d 622, 626 (2d Cir. 1998). Plaintiff's GBL section 349 and 350 claims are governed by New York's CPLR 214(2), which sets a three-year statute of limitations. *Gaidon*, 750 N.E.2d at 1083.

evident that Tesla's representations were deceptive. This was the fundamental holding by the New York Court of Appeals in *Gaidon v. Guardian Life Ins. Co.*

Pursuant to *Gaidon*, "[i]n general, a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon*, 750 N.E.2d at 1083 (citations omitted). "[A]ccrual of a [GBL] section 349(h) private right of action first occurs when plaintiff has been injured by a deceptive act or practice violating section 349." *Id.* (citation omitted).

In *Gaidon*, the plaintiffs brought suit against a life insurer under GBL section 349, alleging it "engaged in deceptive marketing and sales practices in promoting sales of its 'vanishing premium' policies through agents' representations and personalized graphic illustrations showing that, after a specified period, 'the policy's dividends would thereafter cover the premium costs.'" *Gaidon*, 750 N.E.2d at 1080. But "[s]ome eight years" after the plaintiffs had purchased the policies at issue, "premiums were demanded after the purported date they were to be entirely offset by dividends." *Id.* at 1081.

Like the District Court and Defendants here, the insurer took the position that the claims accrued on the date of purchase and were therefore time-barred. *Gaidon*, 750 N.E.2d at 1083. But the New York Court of Appeals rejected this argument, instead finding the plaintiffs' "injuries occurred when they were first called upon to pay additional premiums beyond the date by which they were led to believe that policy dividends would be sufficient to cover all premium costs." *Id.* The court explained the plaintiffs' claims as follows:

> [T]he operative allegations of the violation of General Business Law § 349 [are] that, through "an extensive marketing scheme * * * defendants lured [the plaintiffs] into purchasing policies by using illustrations that created *unrealistic expectations as to the prospects of premium disappearance* upon a strategically chosen 'vanishing date.' This vanishing date, plaintiffs allege, was *misleading*, as based on the premise that interest rates would continue at a high unprecedented rate for, in some cases, 20 or more years—a premise that defendants allegedly knew to be unlikely."

*Id.* at 1084 (citation omitted). The court concluded:

> Because the gravamen of the complaints of General Business Law § 349 violations was not false guarantees of policy terms, but deceptive practices inducing unrealistic expectations of continuing interest/dividend rate performance to fully offset premiums at the projected date, ***plaintiffs suffered no measurable damage until the point in time when those expectations were actually not met***, and they were then called upon either to pay additional premiums or lose

32

coverage and forfeit the premiums they previously paid. Thus, we conclude, the date when those additional premiums were demanded triggered the Statute of Limitations, and these actions, commenced within three years of those dates, were timely commenced.

*Id.* (emphasis added).

As in *Gaidon*, here, the gravamen of the Complaint is that Defendants engaged in deceptive practices by inducing the unrealistic expectation that the Vehicles would be fully self-driving in the near future. *See, e.g.*, A00007 ¶ 1 ("Tesla has deceived and misled consumers regarding the current abilities of its ADAS technology and by representing that it was perpetually on the cusp of perfecting that technology and finally fulfilling its promise of producing a fully self-driving car.").

Specifically as to Nachman, when he went to the Tesla dealership to design his Vehicle, he did so with a Tesla sales representative on the Tesla.com website. A00041 ¶ 90. Part of the process included visiting a page of the Tesla website dedicated to ADAS that made statements such as:

- "With Smart Summon, your car will navigate more complex environments and parking spaces, maneuvering around objects as necessary to come find you," A00042 ¶ 94;

33

- "The system is designed to be able to conduct short and long distance trips with no action required by the person in the driver's seat," A00042 ¶ 95;

- "All you will need to do is get in and tell your car where to go. If you don't say anything, the car will look at your calendar and take you there as the assumed destination or just home if nothing is on the calendar," *id.*; and

- "When you arrive at your destination, simply step out at the entrance and your car will enter park seek mode, automatically search for a spot, and park itself," *id.*

The website made clear that the Vehicle had the hardware it needed by stating: "All Tesla vehicles produced in our factor[y], including the Model 3, have the hardware needed for full self-driving capability at a safety level substantially greater than that of a human driver." A00042 ¶ 93. It then made the offer for the consumer to "[b]uild upon Enhanced Autopilot and order Full Self-Driving Capability on your Tesla. This doubles the number of active cameras from four to eight, enabling full self-driving in almost all circumstances, at what we believe will be a probability of safety at least twice as good as the average human driver." A00042 ¶ 95.

All of this was predicated on the caveat that the software would be developed and approved in the future. Specifically, the Tesla webpage

stated:

> **Please note that Self-Driving functionality is dependent upon extensive software validation and regulatory approval, which may vary widely by jurisdiction.** It is not possible to know exactly when each element of the functionality described above will be available, as this is highly dependent on local regulatory approval.

A00042 ¶ 95.

Plaintiff viewed these claims and agreed to pay for the additional FSD package, at the cost of approximately $8,000. A00043-44 ¶¶ 99-100. Based on Tesla's representations that the system would be improved through over-the-air software updates, Plaintiff continually awaited new updates which would allow for the full self-driving capabilities Tesla claimed the car would have. A00044 ¶ 106. Thus, it was this unrealistic expectation of the future release of the over-the-air software update that would allow Plaintiff's Vehicle to become fully self-driving that was the deceptive act.

While Tesla took the premium payment for FSD on the date of purchase, that premium payment did not become "measurable damage until the point in time when [the unrealistic] expectations [that Defendants' representations created] were actually not met." *Gaidon*, 750 N.E.2d at 1084; *see also Corsello v. Verizon New York, Inc.*, 967 N.E.2d

35

1177, 1185 (N.Y. 2012) (describing *Gaidon* as holding "the plaintiffs were not injured, and the statute of limitations did not begin to run, until the 'unrealistic expectations' that defendants had raised 'were actually not met'").

This leads to the logical question, "what is the point in time when the expectations were actually not met in this case?" The District Court never grappled with this; instead, it assumed that point in time was the point of purchase, thus triggering the running of the statute of limitations immediately on Nachman's purchase of FSD. In many cases concerning deceptive labeling of consumable goods, it is true that the representation at issue is deceptive at the time of the plaintiff's purchase of the product at issue at a premium price.[8]

Here, by contrast, Plaintiff was not injured until the moment after

---

[8] For example, in *Valcarcel v. Ahold U.S.A., Inc.*, the deceptive statement (*i.e.*, "Graham") was on the product packaging, and the act that made that statement deceptive (*i.e.*, inclusion in the product of non-whole-wheat flour as the primary flour) had occurred at the time of purchase. *Valcarcel v. Ahold U.S.A., Inc.*, 577 F. Supp. 3d 268, 273 (S.D.N.Y. 2021). Thus, when the plaintiff paid a premium price due to the "Graham" representation, she immediately "did not receive the full value of her purchase." *Id.* at 280 (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015)). As such, all necessary elements of a GBL section 349 claim were present at the point of purchase.

December 2016 that it became clear that Tesla had failed to meet its commitment to render Plaintiff's Vehicle fully self-driving in the future. *Cf. Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009) (holding plaintiff was not injured under GBL section 349 because he "does not claim that he did not receive adequate insurance coverage or that he did not contract for the coverage he received"). It is at the moment that the statements become deceptive that "all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon*, 750 N.E.2d at 1083; *see Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 277 (S.D.N.Y. 2014) (in determining accrual, "[t]he relevant issue . . . is when the elements of the cause of action giving rise to liability on the part of [the defendants] were in place"). This is because Plaintiff "suffered no measurable damage until the point in time when [the unrealistic] expectations [that Defendants' representations created] were actually not met." *Gaidon*, 750 N.E.2d at 1084.

A simple thought experiment lays bare the failure in the District Court's logic. While Plaintiff purchased his Vehicle on December 31, 2016, if he had filed suit the next day on January 1, 2017, Tesla could

have successfully moved to dismiss, as there was no deceptive act on January 1, 2017, because Tesla had promised Plaintiff's Vehicle would become fully self-driving at a future time. While on the date of purchase Plaintiff did pay a premium price for FSD (*i.e.*, approximately $8,000), A00044 ¶ 100, and he paid that price because of a series of statements by Tesla about full self-driving coming in the future, those statements about the future ability of the Vehicle to be fully self-driving did not become deceptive until Tesla failed to carry through with its promise to make the Vehicle in fact fully self-driving. It is not until that date occurs that the statements become deceptive, and the premium price becomes an injury. It is on that future date when "all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon*, 750 N.E.2d at 1083.

Because the District Court presumed that the injury occurred on the date of purchase, it inappropriately decided the statute of limitations period ended earlier than it should have ended. Specifically, as stated above, Plaintiff's claim was not actionable on January 1, 2017, because Tesla's failure to meet its promise of future performance had not yet rendered the statements deceptive, and thus the claim had not yet

accrued. By setting December 31, 2016, as the accrual date (even though the claim had not yet accrued on December 31, 2016), the District Court determined that the three-year statute of limitations period ended a currently-unknown amount of time sooner than it should have ended if the correct accrual date had been used.[9] In so doing, the District Court committed error. *See Michael Grecco Prods., Inc.*, 112 F.4th at 148, 151 (vacating dismissal of action under Rule 12(b)(6) and remanding because district court erred by miscalculating the accrual date, and "it was not clear from the face of the complaint, or matters of judicial notice, that [the plaintiff's] claims were barred by the statute of limitations as a matter of law").

Ultimately, it is up to **Tesla** to prove the date on which a reasonable person in Plaintiff's position would have known that full self-driving was not in fact coming, thereby making Tesla's representations deceptive and causing the claim to accrue. Plaintiff is not required to plead ***any facts*** to show that that date occurred within three years prior to filing suit. *Michael Grecco Prods., Inc.*, 112 F.4th at 154; *Clark v. Hanley*, 89 F.4th

---

[9] As discussed below, it is Tesla's obligation to show when accrual of the claim occurred because the statute of limitations is Tesla's affirmative defense.

78, 93-94 (2d Cir. 2023). As this Court recently made clear in *Michael Grecco Productions, Inc.*:

> Importantly, "[t]he pleading requirements of the Federal Rules of Civil Procedure do not compel a litigant to anticipate potential affirmative defenses, such as the statute of limitations, and to affirmatively plead facts in avoidance of such defenses." In fact, "[p]laintiffs are under *no obligation* to plead facts supporting or negating an affirmative defense in the complaint."

*Michael Grecco Prods., Inc.*, 112 F.4th at 154 (citation omitted).

"Applying these standards here, [Plaintiff's] complaint needed to plausibly allege a claim [under GBL sections 349 and 350], but the complaint did not need to allege, plausibly or otherwise, that the claim was timely." *Michael Grecco Prods., Inc.*, 112 F.4th at 154. Because it is not clear from the face of the Complaint that Plaintiff's claim accrued and the statute of limitations ran before Plaintiff filed his case, the District Court committed error in granting the motion to dismiss due to the affirmative defense of statute of limitations. *Id.* at 149-50, 154; *Sewell*, 795 F.3d at 339; *Essex Cap. Corp.*, 2018 WL 6618388, at *2.

At base, the District Court committed two reversible errors in dismissing the claims related to the 2016 purchase in its Order and in its Second Order: (i) it erroneously chose December 31, 2016, as the accrual

date of Plaintiff's GBL section 349 and 350 claims, which led it to determine the three-year statute of limitations period ended sooner than it should have ended if the correct accrual date had been chosen, based on the date that the unrealistic expectations Tesla created were actually unmet, and (ii) it dismissed the action on an affirmative defense when the date on which the claim accrued, and therefore whether the statute of limitations period had run, was not clear on the face of the Complaint. This Court should reverse the District Court's Order, and its Second Order, on these grounds alone.

### III. The District Court Erred in Denying Plaintiff's Motion for Leave to Amend on Futility Grounds Because It Failed to Draw Reasonable Inferences in Plaintiff's Favor

In the Order granting Tesla's motion to dismiss, the District Court took the position that the present case is distinguishable from *Gaidon* on the following grounds:

> [W]hile plaintiff suggests that this case is "similar to *Gaidon*" in that Tesla demanded additional money from "some owners" for hardware upgrades after those consumers' initial purchase, plaintiff does not suggest that he was among those owners, or that he paid any additional money to Tesla for automated driving features after he bought the car.

A00078 (citations omitted).[10] The District Court ultimately allowed Plaintiff to file a motion seeking leave to amend. A00083.

Plaintiff subsequently moved to amend his pleading to include multiple allegations related to his payment to Tesla in May 2022 of $1,500 for an Infotainment Upgrade. A00091 ¶ 13; A00125 ¶¶ 108-09. One of the functionalities that Tesla advertised the Infotainment Upgrade as providing was "'Driver Assistance', with the specific improvement of 'Enhanced Driving Visualization for owners with the Full Self-Driving Capability Computer.'" A00125 ¶ 109.

Even though Plaintiff's proposed amended pleading provides precisely what the District Court called for in its Order (*i.e.*, allegations and evidence that Plaintiff "paid . . . additional money to Tesla for

---

[10] The District Court was incorrect that these points distinguish *Gaidon* from Plaintiff's case. The District Court appears to believe that *Gaidon* required a future payment of money after the defendant has made the deceptive statements at issue in order for an "unrealistic expectations" GBL section 349 claim to accrue. A00078. But that is not what *Gaidon* held. The key point in *Gaidon* is that the claim accrued when future events occurred that rendered the unrealistic expectations created by defendants' representations "actually unmet." *Gaidon*, 750 N.E.2d at 1084 (accrual occurred when plaintiffs were "called upon either to pay additional premiums ***or lose coverage and forfeit the premiums they previously paid***" (emphasis added)). Unrealistic expectations can be "actually unmet" in the absence of a future monetary payment.

automated driving features after he bought the car," A00078), in its Second Order, the District Court held these allegations were insufficient because they did not tie back to the original allegations of deceptive conduct by Tesla. A00137. Specifically, it stated:

> [W]hile the proposed amended complaint continues to allege that defendants and their representatives made misleading statements regarding the future availability of self-driving technology from 2014 to 2022, it fails to allege that these earlier statements had any causal connection to plaintiff's purchase of the Infotainment Upgrade. This deficiency is fatal because a plaintiff asserting a [GBL] violation must allege that he "suffered injury as a result of the allegedly deceptive act or practice."

*Id.* (citations omitted).

The District Court's analysis is fatally flawed because it draws inferences against Plaintiff, instead of drawing reasonable inferences in his favor, in direct contravention of the legal standards governing evaluation of whether claims are futile under Rule 15(a). *Schiebel*, 2024 WL 4644958, at *12 (in evaluating a motion to dismiss, the court "cannot" draw inferences against the plaintiff); *Panther Partners Inc.*, 681 F.3d at 119 (in assessing futility, the court "draw[s] all reasonable inferences in plaintiff's favor to determine whether the allegations plausibly give rise to an entitlement to relief").

43

The District Court's decision rests on the faulty assumption that the proposed Amended Complaint does not allege, or does not at least include allegations giving rise to the reasonable inference, that the cost of the Infotainment Upgrade was elevated—at least in part—based on Tesla's repeated deceptive promises throughout the period from 2014 to 2022 that FSD would enable the Vehicles to become fully self-driving in the near future.

But this assumption draws reasonable inferences ***against*** Plaintiff in contravention of the Rule 12(b)(6) standard applicable when assessing futility. *Schiebel*, 2024 WL 4644958, at \*12; *Panther Partners Inc.*, 681 F.3d at 119; *see also Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018). This was error.

At the time Plaintiff purchased the Infotainment Upgrade, Tesla's repeated deceptive representations regarding the future capabilities of FSD had not ceased to exist. And as this Court has stated, "[i]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Mantikas,* 910 F.3d at 636; *see also Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (1995) (adopting "an objective definition

of deceptive acts and practices [under GBL section 349] . . . limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances").

In limiting its analysis to just the statement made at the time of the Infotainment Upgrade, A00137, the District Court inappropriately parsed Tesla's challenged representations, treating Tesla's statements throughout the period from 2014 to 2022 regarding FSD as if they had no effect on the premium price Plaintiff paid for the FSD-related features of the Infotainment Upgrade. To the contrary, throughout the proposed Amended Complaint, Plaintiff ties all of Tesla's misrepresentations to the premium price of the Infotainment Upgrade. For example, the proposed Amended Complaint pleads:

> For years, Tesla has deceptively and misleadingly marketed its ADAS technology as autonomous driving technology under various names, including 'Autopilot,' 'Enhanced Autopilot,' and 'Full Self-Driving Capability', for which Tesla charges consumers thousands of additional dollars to add to their new vehicle ***and/or to later update software for updated ADAS***.

A00085 ¶ 1 (emphasis added). Similarly, the proposed Amended Complaint alleges:

> Tesla's branding and labeling of the Vehicles conveys a message to consumers that is deceptive and misleading and

45

therefore unlawful, namely, that the Vehicles have are self-driving without the need for human supervision and interaction. Unfortunately for consumers, the Vehicles require constant and intensive human supervision and interaction, meaning they are not in fact self-driving. Plaintiff and all class members were harmed by paying more to purchase Vehicles with ADAS than Defendant's Tesla vehicles without ADAS ***and/or paying for post-purchase upgrades for the ADAS***, despite the fact that as of the date of the filing of this amended complaint, the Vehicles still do not have ADAS as represented and promised to consumers.

A00085 (emphasis added).

The District Court ignored these allegations, choosing to draw the opposite conclusion that Tesla's statements throughout the period from 2014 to 2022 regarding the future capabilities of FSD did not influence the premium price that Plaintiff paid for the Infotainment Upgrade. A00137 ("[W]hile the proposed amended complaint continues to allege that defendants and their representatives made misleading statements regarding the future availability of self-driving technology from 2014 to 2022, it fails to allege that these earlier statements had any causal connection to plaintiff's purchase of the Infotainment Upgrade."). In so doing, it committed error, and this Court should reverse its ruling.[11]

---

[11] To the extent that the District Court's reasoning holds Plaintiff to a higher pleading standard than the plausibility standard applicable under Rules 8(a) and 12(b)(6) and thereby requires more factual detail than is

**IV.  The District Court Erred to the Extent That It Misapplied the Continuing Violation Doctrine, or Required Plaintiff to Allege Reliance, in Denying Plaintiff's Motion for Leave to Amend**

In the Second Order, the District Court cited *Basso v. New York University* as holding that "the continuing violation doctrine did not apply to plaintiffs' [GBL] claims where plaintiffs failed to allege that they 'continually relied upon' defendants' 'renewed' deceptive acts." A00137-38 (quoting *Basso*, 2017 WL 1019505, at *5). It is not entirely clear what the District Court intended to convey through its citation to *Basso* and the accompanying parenthetical. However, as discussed below: (i) to the extent that the District Court held the continuing violation doctrine does not apply in this case, it erred, and (ii) to the extent that the District Court added a reliance requirement to Plaintiffs' claims for violation of

---

necessary to render the claim plausible, the District Court erred. Claims under GBL sections 349 and 350 only have to satisfy Rule 8(a), not the heightened pleading standard of Federal Rule of Civil Procedure 9(b). *See Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[B]ecause § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." (citations omitted)).

GBL sections 349 and 350, it erred.

*First*, to the extent that the District Court held the continuing violation doctrine does not apply in this case, it committed error.

The representations stretching back to 2014 are at issue through the continuing violation doctrine, under which "a series of continuing wrongs[] effectively toll[s] the limitations period until the date of the commission of the last wrongful act." *Harvey v. Metro. Life Ins.*, 21 Misc. 3d 1142(A), 2005 WL 6227851, at *3 (N.Y. Sup. Ct. 2005), *aff'd*, 827 N.Y.S.2d 6 (App. Div. 2006); *accord Murphy v. Commonwealth Land Title Ins.*, 621 F. Supp. 3d 373, 377-78 (E.D.N.Y. 2022); *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 432 (S.D.N.Y. 2020) ("Where a [GBL] § 349 claim is based on a series of allegedly deceptive acts, . . . the 'continuing violations doctrine' applies and 'effectively tolls the limitations period until the date of the commission of the last wrongful act.'" (quoting *Breitman v. Xerox Educ. Services LLC*, No. 12-cv-06583-PAC, 2013 WL 5420532, at *4 (S.D.N.Y. Sept. 27, 2013))).

The case of *Harvey v. Metropolitan Life Ins.* is instructive. In *Harvey*, the plaintiff sued his insurance carrier to recover premiums it had charged for a "Child Rider" associated with an insurance policy the

48

plaintiff had purchased, which insured the plaintiff's children until they were 25. *Harvey*, 2005 WL 6227851, at *1. He alleged the defendant wrongly continued to charge the premiums after his children had turned 25, even though the defendant knew the children were over 25 and the Child Rider therefore was no longer operative. *Id.* The children turned 25 in 1998 and 1999, but the defendant had continued to charge the premium until 2003. *Id.* The plaintiff commenced a suit alleging a GBL section 349 claim in 2004. *Id.*

The defendant sought dismissal on the ground that the plaintiff's claim was untimely because the claim first accrued in 2000 when the defendant first improperly charged the plaintiff after the Child Rider was inoperative. *Harvey*, 2005 WL 6227851, at *3. According to the defendant, GBL section 349's three-year statute of limitations had therefore run in 2003, before commencement of the suit in 2004. *Id.* The plaintiff countered that under *Gaidon*, "the 'operative allegations' of a violation of GBL § 349 must be considered in determining the accrual date for a cause of action." *Id.* The plaintiff argued the "defendant's deceptive behavior occurred each month that [the defendant] deducted money . . . for coverage that was not being provided, and that the limitations period

accrued anew with each improper deduction." *Id.* The court agreed, holding that the plaintiff alleged a wrongful act within GBL section 349's limitations period "by alleging that each deduction after the youngest child turned 25, constituted an unlawful act." *Id.*

The Appellate Division of the New York Supreme Court affirmed. As the Appellate Division explained:

> Defendant contends the lawsuit is untimely because plaintiff's youngest child turned 25 in 1999, four years prior to commencement of this suit. However, plaintiff claims to have continued to pay premiums for this Child Rider into 2003, by which time the rider was no longer providing coverage for his children. What is alleged is a "continuing wrong," which—for purposes of our statute of limitations—is "deemed to have accrued on the date of the last wrongful act." Accordingly, the commencement of this action in 2004 was timely.

*Harvey v. Metro. Life Ins.*, 827 N.Y.S.2d 6, 6-7 (2006) (citations omitted).

Here, the proposed Amended Complaint alleges Tesla engaged in numerous acts of deception from 2014 to January 2022, *see supra* Statement of the Case § I.A, which caused a new injury in May 2022, *see, e.g.*, A00085; A00085 ¶ 1; A00118 ¶ 84; A00125 ¶¶ 108-09; A00127 ¶ 124; A00128-29 ¶ 131. Like in *Harvey*, the Amended Complaint alleges a series of continuing wrongs, namely, Tesla's ongoing and repeated deceptive statements about the capabilities of its ADAS and FSD

technology, including the most recent alleged wrongful deception in January 2022, when Tesla CEO Elon Musk stated on an earnings call:

> My personal guess is that we'll achieve Full Self-Driving this year. I would be shocked if we do not achieve Full Self-Driving safer than a human this year. I would be shocked.

A00118 ¶ 84. The foregoing misrepresentations regarding ADAS, and specifically FSD, caused the price of the Infotainment Upgrade to be elevated in May 2022 relative to what it otherwise would have been. *See, e.g.*, A00085; A00085 ¶ 1; A00113 ¶ 68; A00114 ¶ 70; A00116 ¶ 76; A00118 ¶ 84; A00125 ¶¶ 108-09; A00127 ¶ 124; A00128-29 ¶ 131. Nachman therefore suffered injury actionable under GBL sections 349 and 350 based on these wrongful acts when Nachman purchased the Infotainment Upgrade on May 3, 2022, at that elevated price. Under the continuing violation doctrine, the claims stretching back to 2014 were tolled and are timely. *Breitman*, 2013 WL 5420532, at *4; *Harvey*, 827 N.Y.S.2d at 6-7; *see also Plavin v. Grp. Health Inc.*, No. 3:17-cv-01462, 2023 WL 6200804, at *9 (M.D. Pa. Sept. 22, 2023) ("[T]he recurring publication of the allegedly misleading materials is not properly considered a single act. . . . Notwithstanding the identical content, in an abundance of caution, the Court considers the annual or bi-annual

publication of the materials as distinct unlawful acts, rather than a single unlawful act."). Insofar as the District Court held otherwise, it committed error.

*Second*, the District Court erred to the extent that it imported a reliance requirement into Plaintiff's GBL claims in direct contravention to the mandates of the New York Court of Appeals. In the Second Order, the District Court cited the decision in *Basso* as holding the continuing violation doctrine did not apply "where plaintiffs failed to allege that they '***continually relied upon***' defendants' 'renewed' deceptive acts." A00137-38 (emphasis added). The District Court thereby erroneously suggested that GBL section 349 and 350 claims include a reliance requirement, when it is well settled that they do not.

The New York Court of Appeals has made clear that reliance is ***not*** an element of GBL section 349 and 350 claims. *Koch*, 967 N.E.2d at 676 ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law §§ 349 and 350 claims, it was error. Justifiable reliance by the plaintiff is not an element of the statutory claim." (citation omitted)).

As the New York Court of Appeals explained in *Stutman v.*

*Chemical Bank*:

> Reliance and causation are twin concepts, but they are not identical. In the context of fraud, they are often intertwined. But there is a difference between reliance and causation, as illustrated by the facts of this case. Here, plaintiffs allege that because of defendant's deceptive act, they were forced to pay a $275 fee that they had been led to believe was not required. In other words, plaintiffs allege that defendant's material deception caused them to suffer a $275 loss. This allegation satisfies the causation requirement. Plaintiffs need not additionally allege that they would not otherwise have entered into the transaction. Nothing more is required

*Stutman*, 731 N.E.2d at 612-13 (citation omitted).

Based on this precedent, district courts have repeatedly recognized that "[t]o 'satisf[y] the causation requirement,' '[n]othing more is required' than that a plaintiff suffer a loss 'because of defendant[s'] deceptive act.'" *Rodriguez v. It's Just Lunch, Int'l*, 300 F.R.D. 125, 147 (S.D.N.Y. 2014); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 267 (E.D.N.Y. 2019) (same); *Sharpe v. A&W Concentrate Co.*, No. 19-cv-00768-BMC, 2021 WL 3721392, at *2 (E.D.N.Y. July 23, 2021) ("[L]iability 'does not depend on whether class members relied upon the [mis]representation when they purchased the [product at issue], nor does it depend on whether the product met their personal, subjective expectations.'" (quoting *Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482,

53

531 (E.D.N.Y. 2017))).

In *Sharpe*, the court provided an example of when a deception could cause injury absent reliance:

> For instance, "a manufacturer's misrepresentation may allow it to command a price premium and to overcharge customers systematically." A manufacturer can do so when a product with the misrepresentation will "attract greater market demand" than a product without the misrepresentation. A plaintiff thus suffers an injury when "a company marketed a product as having a 'unique quality' . . . the marketing allowed the company to charge a price premium for the product, and . . . the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." That injury does not involve reliance, but it still satisfies Article III.

*Sharpe*, 2021 WL 3721392, at *2 (citations omitted).

Similarly, in *Fishon v. Peloton Interactive, Inc.*, the court "disagree[d] with the statements that appear in some cases that suggest that the only way a consumer can be injured as a result of a false marketing campaign is if she was personally exposed to that campaign and believed and relied to her detriment on the allegedly misrepresented fact." *Fishon v. Peloton Interactive, Inc.*, 620 F. Supp. 3d 80, 101 (S.D.N.Y. 2022). According to the court, "[m]ore recent cases have considered that question and, in light of the New York Court of Appeals' holding in *Stutman* that reliance is not required under Section 349 and 350 and its

54

caution not to conflate the two, have concluded that reliance and therefore exposure are not critical to establishing causation." *Id.* at 102 (citations omitted). Furthermore:

> Under this theory of injury, an individual's awareness of an alleged misrepresentation plays no role in the causation analysis because reliance plays no role in it. [For example, on] the basis of evidence of internal communications "implying that [d]efendants could charge a higher price because of the allegedly misleading claim . . . and reflecting that [d]efendants assigned considerable value to the claim that they allegedly used in a deceptive manner," the [Second Circuit held in *Eidelman v. Sun Products Corp.*] that "a reasonable jury could conclude that some of the price premium which [the plaintiff] paid was attributable to [d]efendant's alleged deception and [the plaintiff] was therefore injured within the meaning of §§ 349 and 350." Neither the plaintiff's awareness of the misrepresentation nor his reliance on it played a role in the conclusion that the facts could support a cognizable injury attributable to the defendant's conduct.

*Id.* at 103 (quoting *Eidelman v. Sun Prods. Corp.*, No. 21-1046-CV, 2022 WL 1929250, at *2 (2d Cir. June 6, 2022) (unpublished)).

The same holds true here. Nachman alleges the price of the Infotainment Upgrade he purchased in May 2022 was inflated because of Tesla's public misrepresentations throughout the period from 2014 to 2022 and that he suffered price premium damages as a result. *See, e.g.*, A00085; A00085 ¶ 1; A00113 ¶ 68; A00114 ¶ 70; A00116 ¶ 76; A00118 ¶ 84; A00125 ¶¶ 108-09; A00127 ¶ 124; A00128-29 ¶ 131. Nothing more is

required. *Stutman*, 731 N.E.2d at 612-13; *see also Eidelman*, 2022 WL 1929250, at \*2. To the extent that the District Court imported a reliance requirement into Plaintiff's GBL section 349 and 350 claims, it erred.

## CONCLUSION

For the reasons above, the District Court's Order granting Defendants' motion to dismiss Plaintiff's Complaint should be reversed, and the Judgment should be vacated. Even if the Court disagrees, it should reverse the District Court's Second Order denying leave to amend.

Date: November 12, 2024        Respectfully submitted,

**REESE LLP**

By: */s/ George V. Granade*
GEORGE V. GRANADE
*ggranade@reesellp.com*
8484 Wilshire Boulevard, Suite 515
Los Angeles, California 90211
Telephone: (310) 393-0070

**REESE LLP**
MICHAEL R. REESE
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500

**REESE LLP**
Charles D. Moore

*cmoore@reesellp.com*
121 North Washington Avenue
4th Floor
Minneapolis, Minnesota 55401
Telephone: (212) 643-0500

*Counsel for Plaintiff-Appellant*
*Michael Nachman and the Proposed*
*Class*

## CERTIFICATE OF COMPLIANCE WITH FEDERAL RULE OF APPELLATE PROCEDURE 32(g)

I hereby certify pursuant to Federal Rule of Appellate Procedure 32(g) that the foregoing brief is proportionally spaced, has a typeface (New Century Schoolbook) of 14 points, and contains 11,820 words (excluding, as permitted by Federal Rule of Appellate Procedure 32(f), the cover page, the table of contents, the table of authorities, the certificate of compliance, and the signature block), as counted by the Microsoft Word processing system used to produce this brief.

Date: November 12, 2024

By: _/s/ George V. Granade_
GEORGE V. GRANADE

58